UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE GARCIA,

                         Petitioner,

           v.

WILLIAMS LEE, Superintendent, Green
Haven Correctional Facility,

                         Respondent.

No. 11-CV-1803 (KMK)

ORDER ADOPTING REPORT &
RECOMMENDATION

---

Appearances:

Jose Garcia
Stormville, NY
*Pro Se Petitioner*

Andrew R. Kass, Esq.
Orange County Attorney's Office
Goshen, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

        Jose Garcia ("Petitioner"), proceeding pro se, has filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, challenging his April 14, 2005, conviction in New York

State Supreme Court, Orange County, for criminal sale of a controlled substance in violation of

New York law (the "Petition"). (*See* Pet. For Writ of Habeas Corpus ("Pet.") (Dkt. No. 1).) The

Appellate Division affirmed the conviction on October 6, 2009. *People v. Garcia*, 885 N.Y.S.2d

771 (App. Div. 2009). The New York Court of Appeals denied Petitioner leave to appeal on

March 2, 2010. *People v. Garcia*, 925 N.E.2d 938 (N.Y. 2010). Respondent filed a

Memorandum of Law opposing the Petition on June 14, 2011. (*See* Resp't's Mem. of Law in

Opp'n to Pet. For Writ of Habeas Corpus ("Resp't's Mem.") (Dkt. No. 8).) Petitioner filed a

Traverse Declaration and Reply Supplement on September 19, 2011. (*See* Pet'r's Traverse Decl. in Supp. of Pet. For Writ of Habeas Corpus ("Pet'r's Traverse") 10 (Dkt. No. 20); Pet'r's Reply Supp. ("Pet'r's Reply") (Dkt. No. 21).)[1]

In a Report and Recommendation ("R&R"), Magistrate Judge Paul E. Davison ("Judge Davison") recommended that the Petition be denied. (*See* Report & Recommendation ("R&R") 2 (Dkt. No. 41).) Petitioner has objections to the R&R. (*See* Pet'r's Obj's to R&R ("Obj's") (Dkt. No. 44).) Respondent has not responded to the objections. After a review of the R&R and Petitioner's objections, the Court adopts the result recommended in the R&R and denies the Petition.

## I. Discussion

### A. Applicable Law

#### 1. Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant

---

[1] The factual and procedural background surrounding Petitioner's conviction is recounted in Magistrate Judge Paul E. Davison's Report and Recommendation. (*See* Report & Recommendation 2–5 (Dkt. No. 41).) The Court does not find it necessary to revisit that discussion here.

to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(2).

Where a party submits timely objections to a report and recommendation, as Petitioner has done here, the Court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (italics and internal quotation marks omitted). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

## 2. Standard of Review

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). "The writ may not issue for any claim

adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof.").

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision is "an unreasonable application of clearly established Federal law" if a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08 (alterations and internal quotation marks omitted). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations and internal quotation marks omitted); *see also id.* (noting that a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (internal quotation marks

omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*— we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir. 1997) ("When reviewing a habeas petition, the factual findings of the New York Courts are presumed to be correct." (alteration and internal quotation marks omitted)). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same).

Finally, only Federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

### 3. Procedural Requirements for Habeas Corpus Relief

"Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements of AEDPA, *see* 28 U.S.C. § 2254. Before the Court reviews the merits of a habeas corpus petition, the Court must determine whether Petitioner complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.

### a. Timeliness

AEDPA imposes upon a petitioner seeking federal habeas relief a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The statute of limitations is tolled if any state post-conviction proceedings are pending after the conviction becomes final. *See* 28 U.S.C. § 2244(d)(2). The limitations period is also subject to equitable tolling, which is warranted only when a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances . . . prevented timely filing." *Finley v. Graham*, No. 12-CV-9055, 2016 WL 47333, at *5 (S.D.N.Y. Jan. 4, 2016) (alterations in original) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

### b.  Procedural Bar

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (internal quotation marks omitted).  A judgement is "independent" if the "last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (internal quotation marks omitted).  A procedural bar is "adequate . . . if it is based on a rule that is firmly established and regularly followed by the state in question." *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation marks omitted).  In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

### c.  Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .").  To satisfy this requirement, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (internal quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant

shall not be deemed to have exhausted the remedies available in the courts of the State, within

the meaning of this section, if he has the right under the law of the State to raise, by any available

procedure, the question presented.").  This requirement reflects important "notions of comity

between the federal and State judicial systems." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d

188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement.  *See McCray v. Bennet*, No. 02-

CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to

determine whether a claim has been exhausted . . . .").  First, "a petitioner [must] fairly present

federal claims to the state courts in order to give the state the opportunity to pass upon and

correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104

(2d Cir. 2011) (alterations and internal quotation marks omitted); *see also Turner v. Artuz*, 262

F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146,

at *5 (E.D.N.Y. July 31, 2012) (same).  This requirement is satisfied if the claim is presented in a

way that is "likely to alert the [state] court[s] to the claim's federal nature," *Carvajal*, 633 F.3d

104 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)), and the state courts are

"apprise[d] . . . of both the factual and the legal premises of the federal claims ultimately asserted

in the habeas petition," *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *see also Bermudez v.

Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same).  In other

words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this

requirement.  *Carvajal*, 633 F.3d 104 (internal quotation marks omitted).  A petitioner may

satisfy this requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis[;] (b)
> reliance on state cases employing constitutional analysis in like fact situations[;]
> (c) assertion of the claim in terms so particular as to call to mind a specific right

protected by the Constitution[;] and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* (internal quotation marks omitted).  However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curium) (citation omitted).  Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (internal quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds*, *Daye v. Attorney Gen.*, 696 F.2d 186, 195 (2d Cir.1982) (en banc); *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011).  In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez*, 394 F.3d at 74.  If the petitioner fails to exhaust his or her state remedies through the entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods.  *See Klein*, 667 F.2d at 282–83 (Noting that, "where the petitioner did not utilize all the appellate procedures of the convicting state to present his claim . . . the petitioner must utilize available state remedies for collateral attack of his conviction in order to satisfy the exhaustion requirement."); *Bernardez v. Bannon*, No. 12-CV-4289, 2016 WL 5660248, at *3 (S.D.N.Y. Sept. 29, 2016).  For example, in New York a defendant may challenge a conviction based on

matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10(1), but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under [New York Criminal Procedure Law] § 440.10."), *adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011). In addition, New York permits only one application for direct review. *See Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York law] . . . ."). "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." *Sparks v. Burge*, No. 12-CV-8270, 2012 WL 4479250, at *4 (S.D.N.Y. Sept 18, 2014).

Accordingly, in those situations, a petitioner no longer has any available state court remedy, and the claims are therefore deemed exhausted, but procedurally defaulted. *See Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and internal quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the reality that deeming an unpresented claim to be exhausted is "cold comfort"). A dismissal of a habeas petition on such grounds is a "disposition . . . on the merits." *Carvajal*, 633 F.3d at 104 (internal quotation marks). "An applicant seeking habeas relief may escape

dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Id.* (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) (holding that "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default," or a showing that the petitioner "is actually innocent of the underlying offense").

B.  Application

Petitioner brought the Petition "on the same grounds as was submitted in the state court." (Pet. 4.)  Per the Petition, those grounds were:

1.  Whether the Appellate Division should have ordered a reconstruction hearing when the record was silent as to the discussion with the court and juror without [P]etitioner being present at a material stage of the proceeding pose [sic] a federal question of law, or in the alternative an evidentiary hearing;

2. The trial court erred [not] charging the affirmative defense of entrapment was unreasonable in light of Supreme Court precedent;

3. Petitioner was denied effective assistance of trial counsel which entails several assigned errors.  Petitioner contends, [sic] the errors independently are sufficient to compel habeas relief, and they are by no means the only ones demanding it;

4, The [trial] court erred withholding the confidential informant's name for investigattive [sic] purpose and infringed on Petitioner's fundamental right to a fair trial;

5. The trial court curtailed trial counsel to comment during summation as to the People's failure to call the confidential information [sic] as a witness impringed [sic] on Petitioner's fundamental right to a fair trial;

6. Insinuating comments made by the prosecution during summation violated Petitioner's right to a fair trial;

7. [The] [t]rial court violated Petitioner's right to a fair trial by a comment it made during trial; and

8. Petitioner's sentence was excessive; employing draconian procedure was an abused [sic] the fairness required by due process.

(Pet. 3–4.)[2]

Petitioner objects to Judge Davison's rejection of Petitioner's claims that: (1) the Appellate Division should have ordered a reconstitution hearing because the trial court held a sidebar during the jury selection process without Petitioner or the court reporter present; (2) the trial court erred by failing to charge the affirmative defense of entrapment; (3) Petitioner was denied effective assistance of trial counsel; and (4) the trial court erred in withholding the confidential informant's name.[3]  (*See generally* Obj's.)  The Court will address each in turn.

### 1.  Reconstruction Hearing

Petitioner contends that Judge Davison erred in rejecting Petitioner's claim that the Appellate Division should have ordered a reconstruction hearing due to "omitted trial transcripts."  (Obj's 2.)  Petitioner argues "the trial court erred by not making a record during the *ex parte* conference that was otherwise unpreserved at the appellate level."  (*Id.*)  And, Petitioner argues, the Appellate Division erred in "transforming an unpreserved substantive claim into an affirmance and thereby create[ed] for the first time a factual finding undeveloped at the trial level."  (*Id.* at 2.)  Citing *People v. Cruz*, 927 N.E.2d 542 (N.Y. 2010), Petitioner claims "[t]he

---

[2] This portion of Plaintiff's Petition is written in all capital letters.  This Opinion reverts to conventional capitalization for ease of readability.

[3] Petitioner does not object to Judge Davison's conclusion regarding Petitioner's claims that: (5) the trial court curtailed trial counsel from commenting during summation; (6) the prosecution made insinuating comments during summation; (7) the trial court made inappropriate comments during trial; and (8) Petitioner's sentence was excessive.  The Court finds that the R&R's decision as to these claims was not "clearly erroneous or contrary to law" and adopts these portions of the R&R.  *Eisenberg*, 564 F. Supp. 2d at 226 (quoting Fed. R. Civ. P. 72(b)(2)).

[A]ppellate [D]ivision likewise erred in assessing the trial court's omission into an adequate merit-based claim." (*Id.* at 3.) [4]

Petitioner relies on *People v. Carr*, 30 N.E.3d 865 (N.Y. 2015), to argue that his "right to counsel during the *ex parte* conference . . . was clearly established and potentially dispositive." (*Id.*) [5] Petitioner claims he was prejudiced because he "irrevocably lost an established privilege to be present with counsel." (*Id.* at 3–4.) Additionally, "the Supreme Court clearly established the nature of the voire [sic] dire proceeding protecting prisoner's right to an impartial jury." (*Id.* at 4.) Consequently, "the R&R was without authority to rule otherwise by the state court's omission which mandates recordation of the trial court's ruling to preserve the vital nature of the proceeding." (*Id.*)

Petitioner further argues that his "right to be present constituted an independent claim of relief" under the Fifth and Fourteenth Amendments because "after indictment nothing shall be done in the absence of the prisoner." (*Id.* at 4–5 (citing *United States v. Canady*, 126 F.3d 352, 360 (2d Cir. 1997)).) [6] Petitioner claims he "had a fundamental relationship with a reasonable substantive right to select jurors of his peers," suggesting "possibilities of errors in his absence." (*Id.* at 5.) And, "the R&R's factual finding . . . cannot be reconciled from a deficient state court record." (*Id.*) In accordance with *Cullen*, 563 U.S. 170, Petitioner claims "the R&R does not

---

[4] In *Cruz*, the New York Court of Appeals found the defendant had rebutted the presumption of regularity at the reconstruction hearing by substantial evidence that the jury received an exhibit not in evidence. *See* 927 N.E.2d at 543.

[5] In *Carr*, the New York Court of Appeals held that holding an in camera hearing to discuss witness's mental and physical capacity to testify without defense counsel present violated a defendants' Sixth Amendment right to counsel. *See* 30 N.E.3d at 870.

[6] In *Canady*, the Second Circuit held that the district court's decision to mail the verdict instead of announcing it in open court violated the defendant's right to be present at all stages of his trial. *See* 126 F.3d at 360.

have the prerogative to substitute its judgment and interpret a deficient state court record differently and improvidently." (*Id.*) Petitioner further states that "reasonable jurists did indeed disagree on whether the right to be present contrary to the R&R's conclusion by rejecting the R&R's more narrow review insofar where a legitimate constitutional claim by the state court's omission to develop a record should have been applied." (*Id.* at 5–6.) According to Petitioner, "a hearing should have been held before reaching the merits." (*Id.* at 6.)

While this objection is not the model of clarity, the Court liberally construes it to refer to Petitioner's claims that he was deprived of his right to be present during an alleged conversation the trial judge allegedly had with two jurors prior to voir dire and that the Appellate Division should have ordered a reconstruction hearing to develop the record regarding those conversations. According to the trial court transcript, during jury selection, the trial judge asked if any prospective jurors had valid scheduling reasons for not sitting on the jury. (Tr. (Feb. 24, 2005) ("Feb. 24 Tr.") 33 (Dkt. No. 11).) Four or five jurors on one side of the courtroom and a couple on the other side of the courtroom raised their hands, and the trial judge asked them to "line up in the middle of the courtroom please I'll talk to you here at the bench." (*Id.* at 34.) Then, the trial judge asked, "Can I see the two of you up here, please." (*Id.*)[7] The transcript then indicates: "Discussions held at the bench out of the hearing of the reporter and the defendant." (*Id.*) The trial judge then said, "Anyone else have anything they want to run past me or try?" (*Id.*) Followed immediately with, "Okay, swear the panel." (*Id.*) Then, voir dire began. (*Id.*) Petitioner alleges his Sixth Amendment right to counsel and his Fifth and Fourteenth

---

[7] Petitioner alleges that the off-the-record conversation involved the trial court questioning two jurors and that it may have included impermissible questions. (Pet'r's Traverse 6–12.) Respondent suggests the conversation did not involve two jurors, and "two of you" referred to trial counsel and the trial assistant. (Resp't's Mem. 22.) The Court does not need to resolve this factual dispute, and will assume they were jurors for purposes of the Petition.

Amendment right to be present during all material stages of the proceedings was violated by this ex parte interaction between the judge and jurors, and that he was entitled to a reconstruction hearing to develop the record.  (Obj's 2–6.)[8]

Under New York law, "a defendant has a fundamental right to be present during any 'material' stage of the trial."  *People v. Antommarchi*, 604 N.E.2d 95, 97 (1992) (citing N.Y. Crim. Pro. L. § 260.20); *People v. Turaine*, 577 N.E.2d 55, 56 (N.Y. 1999); *People v. Mullen*, 374 N.E.2d 369, 370–71 (1978)).  In *Antommarchi*, the New York Court of Appeals of held that "questioning during the impaneling of the jury may constitute a material stage of the trial."  *Id.* However, the right is limited, and a defendant may be absent from side-bar discussions "if the questions relate to juror qualifications such as physical impairments, family obligations and work commitments."  *Id.* (citing *People v. Velasco*, 570 N.E.2d 1070, 1071–72 (N.Y. 1991)).  Further, "the determination that a prospective juror was disqualified before voir dire [is] a matter for the court and [a] defendant ha[s] no statutory or constitutional right to personally participate in the discussions . . . ."  *Velasco*, 570 N.E.2d at 1071.  Following these principles, the Appellate Division determined that Petitioner's claim as was "without merit."  *Garcia*, 885 N.Y.S.2d at 772 (citing *Velasco*, 570 N.E.2d 1070).

_____

[8] Under New York law, "reconstruction hearings may be appropriate where it is clear that a proceeding took place that was not transcribed; the trial court refused to record the proceedings; the minutes have been lost; or there is significant ambiguity in the record."  *People v. Velasquez*, 801 N.E.2d 376, 379 (N.Y. 2003) (citing *People v. Michalek*, 631 N.E.2d 114 (N.Y. 1994) (reconstruction hearing ordered where *Sandoval* hearing held but not transcribed); *People v Davidson*, 675 N.E.2d 1206 (N.Y. 1996) (reconstruction hearing ordered where trial court refused to record substantial portions of voir dire proceeding)).  However, "[r]econstruction hearings should not be routinely ordered where . . . the record is simply insufficient to establish facts necessary to meet the defendant's burden of showing that he was absent from a material stage of the trial."  *Velasquez*, 801 N.E.2d at 379.

While Petitioner now phrases the conversation with the jurors as violating his Federal Constitutional rights, (*see, e.g.*, Obj. 4 ("the Supreme Court clearly established . . ."); *id.* ("the Fifth Amendment protects . . ."); *id.* at 5 ("under the Fifth and Fourteenth Amendment . . ."); *id.* at 6 ("legitimate constitutional claim . . ."); *id.* ("the underlying constitutional principle . . ."); *id.* at 7 ("[P]etitioner's constitutional right to be present . . ."); *id.* ("reconsider the independent constitutional claim . . .")), the Court must determine whether the state court was put on notice that Petitioner was bringing a federal claim. Judge Davison was correct in concluding that Petitioner's argument before the Appellate Division did not place the state court on notice that it was being called upon to decide a federal claim and thus Petitioner's claims were unexhausted but procedurally barred. (R&R 16–17.) Petitioner makes no specific or written objection to the R&R on this point.[9] Petitioner's brief on direct appeal to the Appellate Division did not present the facts or legal premises of the claim in a way "likely to alert the [state] court[s] to the claim's federal nature." *Carvajal*, 633 F.3d at 104 (alterations and internal quotation marks omitted). Instead, Petitioner's briefs relied entirely on state law and state court cases in arguing this claim. (*See* Resp't's Mem., Ex. 4 ("Appellant's Br.") 46–48 (Dkt. No. 8); Resp't's Mem., Ex. 6 ("Appellant's Reply Br.") 130–132 (Dkt. No. 8).) Not only did Petitioner's appellate submissions make no mention of the U.S. Constitution or Federal law, they cite no "federal cases employing constitutional analysis," the state cases relied on do not employ "constitutional analysis in like fact situations," they use no language that "call[s] to mind a specific right protected by the Constitution," and the facts presented are not "within the mainstream of constitutional litigation." *Carvajal*, 633 F.3d at 104 (internal quotation marks omitted). Thus,

---

[9] Petitioner's assertion in the Traverse that the "claim is fully exhausted and poses a federal question" lacks any support—the portions of the Petition the Traverse references contain citations to state court cases. (*See* Pet'r's Traverse 10.)

the state court did not have a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson*, 459 U.S. at 6 (internal quotation marks omitted). The Court finds Petitioner failed to present a federal claim to the state courts.

Petitioner's claim is procedurally barred under New York law, because he already took the only direct appeal to which he is entitled. *See Jimenez*, 458 F.3d at 149 (finding claim "exhausted because state remedies are no longer available" where the petitioner had "already taken his one direct appeal"). And, the claim cannot be raised in a collateral proceeding, because it could have been raised on direct appeal. *See Sparks*, 2012 WL 4479250, at *4 ("In New York a defendant . . . may not seek collateral review of claims that could have been raised on direct appeal and were not." (citation omitted)); N.Y. Crim. Proc. Law § 440.10(2)(c) (barring review if claim could have been raised on direct review)). Because Petitioner no longer has state remedies available to him, New York courts would deem Petitioner's claim procedurally barred for failing to "adequately present his federal claim to the state courts." *Carvajal*, 633 F.3d at 104. And, Petitioner has not "demonstrate[ed] cause for the default and prejudice" or "show[n] that he is actually innocent of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (internal quotation marks omitted). Accordingly, because Petitioner has not "properly exhausted" his state remedies by fairly presenting his claim to the state courts, *Galdamez*, 394 F.3d at 73, and may no longer do so, the Court adopts the R&R's conclusion that Petitioner's *Antommarchi* claim is exhausted but procedurally defaulted.

Even if Petitioner is correct that this claim has been exhausted, (s*ee* Pet'r's Traverse 10), Petitioner's *Antommarchi* claim cannot be the basis for habeas relief because the Appellate Division's decision denying the claim and request for a reconstruction hearing was not contrary to, nor did it involve an unreasonable application of, clearly established *Federal* law. *See* 28

U.S.C. § 2254(d). In reviewing a habeas petition, the Court is limited to deciding whether the Constitution, laws, or treaties of the United States were violated, and *Antommarchi* claims are state-law questions. *See Diaz v. Herbert*, 317 F. Supp. 2d 462, 473 (S.D.N.Y. 2004) ("[D]ecisions of the New York Court of Appeals make clear that the *Antommarchi* rule is not a result of federal constitutional or statutory mandate, but rather, is grounded in New York Criminal Procedure Law § 260.20.")); *People v. Vargas*, 668 N.E.2d 879, 884 (N.Y. 1996) (stating that in accord with *Antommarchi*, defendants have a statutory right under § 260.20 to be present at voir dire sidebars and thus, the rule is "not rooted in the Constitution"); *People v. Mitchell*, 606 N.E.2d 1381, 1385 (N.Y. 1992) (noting that the *Antommarchi* rule involves a statutory violation of § 260.20 and thus, "is not compelled by Federal law . . ."). Even if Petitioner has stated a *Antommarchi* claim under New York law—unlikely, given a defendant has no right to participate in the determination that a prospective juror was disqualified before voir dire, *Velasc*o, 570 N.E.2d at 1071— "there is no equivalent guarantee in the federal Constitution," *Cox v. Ebert*, No. 06-CV-3159, 2007 WL 2948160, at *21 (S.D.N.Y. Oct. 10, 2007), *adopted by* 2010 WL 3119445 (S.D.N.Y. Aug. 5, 2010). The "[f]ederal standards regarding a defendant's presence at a sidebar are less stringent than New York's standards." *Perez v. Greiner*, No. 00-CV-5504, 2005 WL 613183, at *5 (S.D.N.Y. Mar. 14, 2005) (internal quotation marks omitted). "Indeed, the Federal Constitution generally does not require a defendant's presence at sidebar conferences." *McKnight v. Superintendent Albauch*, No. 97-CV-7415, 2000 WL 1072351, at *6 (S.D.N.Y. Aug. 2, 2000) (internal quotation marks omitted); *accord United States v. An–Lo*, 851 F.2d 547, 558–59 (2d Cir. 1988) (holding that trial court committed no error when it questioned two jurors without [the] defendants or their counsel present, to determine effect of newspaper article on jury). Thus, by definition, a state court's

rejection of precisely this claim has regularly been held not to be an unreasonable application of, or contrary to, federal law. *See, e.g.*, *Perez*, 2005 WL 613183, at *5–6 ("Although the pre-screening and impaneling of jurors is a material stage of trial at which a defendant has a constitutional right to be present, there is no clear Supreme Court precedent supporting a claim that absence from a sidebar conference during voir dire violates the Sixth Amendment. Therefore, the Appellate Division's adjudication of this claim is not contrary to, or an unreasonable application of, that law.") (citations omitted); *Sanchez v. Burge*, No. 04-CV-2622, 2005 WL 659195, at *3 (S.D.N.Y. Mar. 22, 2005) ("Here, petitioner fails to cite to any federal statute or Supreme Court precedent holding that a petitioner has a right to be present at sidebar conferences during voir dire. *Antommarchi* is a state law rule and does not entitle petitioner to federal habeas corpus relief."); *Diaz v. Herbert*, 317 F. Supp. 2d 462, 473 (S.D.N.Y. 2004) ("[E]ven if [petitioner's] rights under *Antommarchi* were violated, it does not rise to the level of a federal constitutional violation. Therefore, any alleged violation of these rights is not cognizable on habeas review."); *Persaud v. Mantello*, No. 99-CV-1861, 2002 WL 1447484, at *2 (E.D.N.Y. July 2, 2002) (noting that "district courts in this circuit have held that there is no right to be present at a sidebar conference during voir dire") (citing cases); *James v. Senkowski*, No. 97-CV-3327, 1998 WL 217903, at *8 (S.D.N.Y. Apr. 29, 1998) ("[T]here is not now and never has been a right guaranteed in the federal Constitution that a defendant be present at sidebar voir dire.").[10]

---

[10] Many of these cases assume a Defendant's presence during voir dire. Here, the ex parte conversations occurred prior to voir dire. (Feb. 24 Tr. 33–34.) Because New York law does not recognize an *Antommarchi* claim prior to voir dire occurring, *Antommarchi*, 604 N.E.2d at 97, and given federal law is "less stringent than New York's standards," *Perez*, 2005 WL 613183, at *5, any federal right Petitioner has prior to voir dire is even less than that suggested in these cases.

Petitioner has not satisfied his burden of showing a federal ground for habeas relief, and therefore Petitioner's claim must be denied.  *See Cullen*, 563 U.S. at 181 ("Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'")

### 2.  Entrapment Defense

Petitioner objects to the R&R's finding "that the state court had a legitimate basis to keep from the jury Petitioner's entrapment defense."  (Obj's 7.)  Petitioner argues that the "[t]he R&R erred as the trial court did . . . as he was entitled to under New York law to have the jury instructed on the law as it relates to his defense."  (*Id.* at 11.)  Therefore, "[t]his Court should find no trouble in concluding that not only the trial court erred in instructing the jury on a entrapment defense and this was egregiously at odd[s] with the standard of due process propounded by the Supreme Court in *Cupp v. Naughten*, 414 U.S. 141 (1973)."  (*Id.* at 11–12.)[11] Petitioner claims that the R&R further erred by "fail[ing] to recognize that such a charge so infected the entire trial that the resulting conviction authorize[s] habeas corpus relief."  (*Id.* at 12.)

Petitioner contends that on appeal, he argued that failure to instruct the jury on an entrapment defense "violated the basi[c] tenant of due process," (*id.* at 7), because "the state court misinterpreted a fundamental right under New York law which affords defendants a right to chart their own defense," (*id.* at 8 (citing *People v. Clark*, 9 N.Y.S. 3d 277, 285 (App. Div.

---

[11] In *Cupp*, the Supreme Court reaffirmed that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge," and held that an instruction that the jury should presume witness testimony to be truthful did not shift the burden of proof or negate the presumption of innocence and did not violate the requirements of the Due Process Clause of the Fourteenth Amendment.  414 U.S. at 146–49.

2015), *aff'd*, 69 N.E.3d 604 (N.Y. 2016)).)[12]  Additionally, according to Petitioner, "the Supreme

Court affirmed that the broad nature of the right to present a defense is rooted directly in [the]

Due Process clause of the Fourteenth Amendment."  (*Id.* at 9.)  Petitioner argues "[t]his right is

abridged by state evidentiary rules that 'infringe upon the weighty interest of the accused, and

are "arbitrary" or disproportionate to the purpose they are designed to serve.'"  (*Id.* (quoting

*Holmes v. South Carolina*, 547 U.S. 319, 319 (2006)).)

Petitioner believes that he should have been able to offer an entrapment defense, because

he "testified to the underlying element of the offense but argued he was nevertheless predisposed

to engage in the underlying conduct.  This clearly was a credibility determination reserved for

the jury, and not for the [trial c]ourt to resolve."  (*Id.* at 9.)  According to Petitioner, the R&R

erred by "fail[ing] to undergo an assessment of Petitioner's 'unwillingness' which spans from

2002 to 2004, and relied solely on the Government's evidence."  (*Id.*)  Petitioner argues further

that "[b]ecause such restriction entailed an unreasonable application of fact to exclude from the

jury, Petitioner's testimony in its entirety is a violation and was committed within the ambit of

due process."  (*Id.*)  Petitioner relies on *United States v. Bradfield*, 113 F.3d 515 (5th Cir. 1997),

which he describes as holding "that due to the lack of 'willingness' [the] defendant made a *prima*

*facie* showing [of] non disposition" when "the government informant ha[d] importuned the

defendant approximately eighteen times to participate in a drug deal, before the defendant finally

acquiesced, and there was no evidence that the defendant 'had ever any interest or "willingness"

to participate in the drug deal before he met with the government informant,' the Fifth Circuit

determined that due to the lack of 'willingness' defendant made a prima facie showing [of] non

---

[12] *Clark* held that "where an instruction on the defense of justification would interfere with the accused's chosen defense theory, the trial court is under no obligation to charge justification sua sponte."  9 N.Y.S.3d at 290.

disposition." (*Id.* at 10.)  Petitioner also cites *United States v. Sligh*, 142 F.3d 761 (4th Cir.

1998), which he describes at holding "multiple conversation [sic] ignoring [the agent's] multiple

suggestions or wrongdoing made a *prima facie* showing of an entrapment instruction."  (*Id.*)  He

argues the Second Circuit could arrive at the same conclusion, citing *Vega v. Walsh*, 258 F.

App'x. 356 (2d Cir. 2007).  (*Id.*)

Petitioner also refers to the trial court's statement in response to a question from the jury

requesting a definition of "entrapment" as prejudicing the jury as to his credibility and

innocence.  (*Id.* at 10–11.)  In discussing the jury's question with counsel, the trial court stated:

"I'm going to direct [the jury] as a matter of law that the issue of entrapment is not before them."

(Tr. (Mar. 4, 2005) ("Mar. 4 Tr.") 97 (Dkt. No. 16).)  The trial court explained, "I have already

ruled as a matter of law that the defense of entrapment is not to be submitted to the jury.  I ruled

that as a matter of law I will not permit the jury to consider it as a matter of fact.  I did not charge

them on entrapment.  On this record I have already ruled that no reasonable view of the evidence

would support that defense as a matter of law which is not an issue for the jury."  (*Id.* at 98.)  The

trial court then stated "[b]ring the jury in," (*id.* at 98), and proceeded to tell the jury:  "You have

also asked for the definition of entrapment.  I charge you now as a matter of law that entrapment

is not before you.  You may retire and continue deliberation," (*id.* at 99).  Petitioner takes issue

with this alleged "admonishing" of the jury, (Obj's 10), arguing "the trial court instruction

refined and sharpen[ed] the prejudice, it allowed the jury to infer that Petitioner's testimony

lacks the level of credibility to be considered and was arbitrarily unjust.  Once the trial court

instructed the jury not to consider Petitioner's testimony during its deliberation process, this was

'catastrophic.' It converted a reasonable possibility of an acquittal into a virtual guilty verdict," (Obj's 11).[13]

"Entrapment is an affirmative defense that requires a defendant to prove by a preponderance of the evidence the government's inducement to commit the crime." *United States v. Taylor*, 475 F.3d 65, 69 (2d Cir. 2007) (internal quotation marks omitted). The entrapment defense "lacks a constitutional dimension; instead it is a creature of statutory construction based on 'the notion that Congress could not have intended criminal punishment for a defendant who has committed all elements of a proscribed offense but was induced to commit them by the Government.'" *Id.* (quoting *United States v. Russell*, 411 U.S. 423, 435 (1973)). Because New York has defined the defense of entrapment, *see* N.Y. Penal L. § 40.05, a denial of that defense could violate a defendant's right to due process if the denial was "sufficiently harmful to make the conviction unfair," *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005).

At the outset, the Supreme Court has emphasized that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67–68. In making this

---

[13] To the extent Petitioner suggests the trial court's statement that it would not permit the jury to consider the defense of entrapment prejudiced the jury as to Petitioner's credibility and guilt, this claim has no merit. (*See* Obj's 10–11 (citing Mar. 4 Tr. 97–99).) The discussion on the merits of the entrapment defense as a matter of law and fact occurred outside the jury's presence following receipt of a note from the jury. (*See* Mar. 4 Tr. 95 (transcript noting "the jury retired to continue deliberations at 11:40 a.m."); *id.* at 96 (trial court stating it received a note); *id.* at 97–98 (trial court discussing entrapment defense with trial counsel); *id.* at 98 (trial court stating "[b]ring the jury in"); *id.* at 98–99 (transcript noting "the following took place in open court with all parties and the jury present"(.) The only statement to the jury regarding the entrapment question was: "You have also asked for the definition of entrapment. I charge you as a matter of law that entrapment is not before you. You may retire and continue deliberation." (*Id.* at 99.) This was in no way admonishing the jury or "catastrophic" to Petitioner's credibility and innocence.

determination, the Second Circuit has instructed courts to use a two-step test to determine if a jury instruction violated Petitioner's federal due process rights: The "first step" is to determine whether the "petitioner was erroneously deprived of a jury instruction to which he was entitled." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). The second step is to determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Cupp*, 414 U.S. at 147). If the answer to the first two inquiries is yes, the Court must then determine if "the state court's contrary conclusion constitute[d] an unreasonable application of clear Supreme Court law." *Jackson*, 404 F.3d at 621.

Petitioner's claim fails at step one, because the trial court's determination that Petitioner was not entitled to an entrapment defense was not erroneous under New York law. In evaluating a claim at step one, "federal courts must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional." *Davis*, 270 F.3d. at 123 n.4. Entrapment is an affirmative defense under New York law, and "the defendant has the burden of establishing such defense by a preponderance of the evidence." N.Y. Penal L. § 25.00(2). An entrapment defense is available in New York when "the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by . . . [official conduct], and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it." N.Y. Penal L. § 40.05. This requires "both that the proscribed conduct was induced or encouraged by official activity and that the defendant had no predisposition to engage in such conduct." *People v. Butts*, 533 N.E.2d 660, 663 (N.Y. 1988) (internal quotation marks omitted). However, "[c]onduct merely affording a person an opportunity to commit an offense does not constitute entrapment." N.Y. Penal L. § 40.05. "Merely asking a defendant to commit a crime is not such

inducement or encouragement as to constitute entrapment." *People v. Brown*, 631 N.E.2d 106,

108 (N.Y. 1993). Additionally, "the government may defeat the defense of entrapment with

proof of predisposition to commit the crime." *Taylor*, 475 F.3d at 69. Where "no reasonable

view" of the evidence would allow a jury to find that the statutory requirements of an entrapment

affirmative defense were satisfied, a defendant is not entitled to the charge. *Brown*, 631 N.E. 2d

at 107.[14]

The R&R correctly concluded that the state courts did not err in deciding the prosecution

did not induce or encourage Petitioner to sell drugs and that Petitioner was "predispose[d] to sell

cocaine." (R&R 19–20.) The Appellate Division, in rejecting Petitioner's appeal on this

question, determined that "[t]he trial court properly declined [Petitioner's] request to charge the

jury with the affirmative defense of entrapment since no reasonable view of the evidence

supported that defense." *Garcia*, 885 N.Y.S.2d at 772. More specifically, "the evidence

demonstrated that an undercover detective merely afforded [Petitioner] the opportunity to

commit the offenses, which, standing alone, was insufficient to warrant an entrapment charge."

*Id.* This finding was not an unreasonable determination of the facts in light of the evidence

presented. *See* 28 U.S.C. § 2254(d)(2). As the R&R accurately states, the record—which

contains testimony from Detective Faluotico, the undercover detective who bought cocaine from

petitioner; audio recordings of February 9, 2004 and March 25, 2004 cocaine sales; and

wiretapped phone calls setting up the sales—showed that on three occasions, when asked,

Petitioner promptly procured an ounce or more of cocaine for the government's undercover

---

[14] It bears noting that the New York Court of Appeals has held that a "the jury must be instructed on all claimed defenses which are supported by a *reasonable* view of the evidence— not by any view of the evidence, however artificial or irrational." *People v. Butts*, 533 N.E.2d 660, 663 (N.Y. 1988).

officer.  (*See* R&R 19.)  More specifically, during the sale on February 9, 2004, Petitioner and

Detective Faluotico haggled over the price, with Petitioner asking for $925.00 per ounce and

dismissing offers for $850.00 or $900.00, stating at one point "I pay fuckin' [$]28,000.00 a

fuckin' kilo" and the price was "a good deal" for Detective Faluotico—suggesting not only a

complete lack of pressure to sell cocaine to Detective Faluotico, but also that this was not

Petitioner's first cocaine transaction.  (Tr. (Mar. 1, 2005) ("Mar. 1 Tr.") 127 (Dkt. No. 13); Tr.

(Feb. 23, 2005) ("Feb. 23. Tr.") 12–13 (Dkt. No. 10).)  As Detective Faluotico testified,

Petitioner's statement regarding purchasing in kilos indicated to him that "in the future [he]

could buy a lot more than an ounce from him if he was buying in kilos."  (Mar. 1 Tr. 128.)

Before the March 25, 2004 sale, Detective Faluotico and Petitioner again had a protracted

negotiation for approximately two minutes and 42 seconds over the price of a larger purchase of

cocaine, and Petitioner testified that he "wasn't making any money" that day by selling at the

price Faluotico requested.  (Mar. 1 Tr. 87–91; Tr. (Mar. 2, 2005) ("Mar. 2 Tr.") 83–84 (Dkt. No.

14).)  Minutes after his conversation with Detective Faluotico, Petitioner called his supplier,

Karen Hill, and quickly arranged for the purchase of almost three ounces of cocaine.  (Tr. (Mar.

3, 2005) ("Mar. 3 Tr.") 12–14 (Dkt. No. 15).)  Petitioner requested Hill have everything ready in

five minutes, which she did. (*Id.*)  These interactions again demonstrated familiarity with cocaine

amounts and pricing, and Petitioner's ready access to drugs for sale.  A wiretap on Petitioner's

phone beginning March 9, 2004 "intercepted numerous" phone calls where "[Petitioner] was

contacting people to facilitate his drug business."  (Mar. 1 Tr. 34.)  Additionally, following the

first sale on February 9, 2004, Petitioner willingly gave Detective Faluotico his phone number

and said he could contact him directly whenever he needed something, (*id.* at 102, 114), and the

two "had a friendly business relationship" and routinely interacted with each other using friendly

names like "bro" and "buddy," (*id.* at 97, 114).  After selling Detective Faluotico drugs on March 25, 2004, Petitioner told Detective Faluotico to "be careful."  (Mar. 1 Tr. 98; Mar. 3 Tr. 10–11.) The warm relationship between two did not suggest Detective Faluotico had to coerce or intimidate Petitioner into selling him drugs. These facts all belie Petitioner's claim that he only sold drugs on three occasions or that he was entrapped into doing so.  Instead, the evidence reasonably could be interpreted to show that Petitioner required no inducement to sell drugs and was not only predisposed, but ready, to do so.

Petitioner's argument that Judge Davison "failed to undergo an assessment of Petitioner's unwillingness," (Obj's 9), is wrong:  Judge Davison noted that there was "no evidence of force, coercion or other 'methods . . . such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it.'"  (R&R 19 (quoting N.Y. Penal L. § 40.05).)  Petitioner also testified that when contacted by the confidential informant, he stated "I told the person that I could get it for him, but I didn't have any drugs."  (Mar. 2 Tr. 65; *see also id.* at 66 (stating the reason Petitioner did not sell drugs to Detective Faluotico was because "I didn't have any drugs to sell to [Detective Faluotico]" but that he told the confidential informant that "[Detective Faluotico] could indicate that [he wanted to buy drugs] later.")  By Petitioner's own account, he did not sell drugs earlier to the undercover detective because of a lack of supply, not an unwillingness to do so.  Thus, the totality of the evidence demonstrated the government official "merely ask[ed] [Petitioner] to commit a crime."  *Brown*, 631 N.E.2d at 108.

The cases Petitioner cites to support his Petition are to no avail.  (*See* Obj's 9.)  *Bradfield* and *Sligh* are out of circuit cases that apply federal, not New York, law.  *See Davis*, 270 F.3d at 123 n.4 (directing federal courts to consider the relevant state-court interpretations of the state's laws).  Unlike the facts here, *Bradfield* involved numerous, persistent, and relentless efforts to

persuade the defendant to engage in the crime, which were initially met without response from the defendant. *Bradfield*, 113 F.3d at 523. And, there was no evidence in that case that the defendant had ever shown interest in—let alone engaged in—a drug deal before meeting the government enforcement. *Id.* Similarly, *Sligh* involved repeated invitations of wrongdoing and persistent baiting of the defendant. *Sligh*, 142 F.3d at 763. And *Vega*, which entailed almost identical circumstances, concluded the defendant "was not entitled to an entrapment charge . . . under New York state law." *Vega*, 258 F. App'x at 358. There, just as here, "there was no evidence that the undercover officers actively persuaded defendant to engage in the transactions . . . the confidential informant and officers merely offered defendant an opportunity to commit the crimes . . . there was no evidence of inducement or encouragement." *Id.* at 359. And, "[t]he fact that government agents merely afford opportunities or facilities for the commission of the offense does not constitute entrapment." *Id.* (internal quotation marks omitted).

Additionally, no reasonable view of the evidence would show that Petitioner was "not otherwise disposed to commit" the crime. N.Y. Penal Law § 40.05. The R&R accurately stated that "the record is replete with evidence that [P]etitioner was predisposed to sell cocaine." (R&R 20.) Petitioner testified that he regularly obtained cocaine and would share it with his friends (Mar. 3 Tr. 16), *i.e.* he regularly engaged in conduct that would constitute selling cocaine under New York law. *See* N.Y. Penal L. §220.00(1) ("'Sell' means to sell, exchange, give or dispose of to another, or to offer or agree to do the same."). When the confidential informant called Petitioner on February 9, 2004 seeking drugs, Petitioner testified he responded "yes, I'll get it right now, call me in five minutes." (Mar. 2 Tr. 66.) On March 25, 2004, Petitioner was able procure a little less than three ounces of cocaine from a supplier within minutes. (Mar. 3 Tr. 12–

14.)  Petitioner's "ready response to the solicitation" also "demonstrated a predisposition to commit the crime."  *People v. Mickler*, 695 N.Y.S.2d 843, 844 (App. Div. 1999) (internal quotation marks omitted).[15]  The Court agrees that the evidence shows Petitioner was predisposed to commit the crime of selling cocaine.

Petitioner has failed to surmount the first step of the *Davis* inquiry, and the Court need not consider the second step.  *See* 270 F.3d at 124.  Having found no error of state law, the Court concludes that Petitioner's federal due process rights were not violated, and Petitioner is not entitled to habeas relief on this claim.  *See Blunt v. Perez*, No. 14-CV-2333, 2015 WL 1654598, at *13 (S.D.N.Y. Apr. 15, 2015) (denying habeas petition alleging failure to charge entrapment defense where "no reasonable view of the evidence . . . would permit the jury to conclude that the statutory elements of entrapment were satisfied"), *adopted by* 2015 WL 2089189 (S.D.N.Y. May 5, 2015), *vacated* (May 15, 2015), *and adopted by* 2016 WL 67721 (S.D.N.Y. Jan. 4, 2016), *as corrected* (Jan. 7, 2016); *Moronta v. Griffen*, No. 13-CV-4081, 2014 WL 956297, at *8 (S.D.N.Y. Mar. 11, 2014) (deferring to state court interpretation of state law in deciding not to instruct jury on extreme emotional disturbance affirmative defense and denying habeas petition), *aff'd*, 610 F. App'x 78 (2d Cir. 2015); *Alexander v. Connell*, No. 10-CV-6658, 2012 WL 3249415, at *14 (S.D.N.Y. Aug. 3, 2012) (deferring to state court interpretation of state law in deciding not to instruct jury on entrapment affirmative defense and denying habeas petition); *Williams v. Smith*, No. 10-CV-03043, 2011 WL 96735, at *9 (E.D.N.Y. Jan. 11, 2011) (deferring

---

[15] The trial court also found Petitioner's entrapment defense unavailing because it was based on the argument that the undercover induced Petitioner to sell a higher quantity of drugs then he otherwise would have.  (Feb. 23 Tr. 14–15.)  However, the trial court concluded this was an admission of Petitioner's willingness to sell drugs in the first place, negating a lack of predisposition.  (*Id.*)

to state court interpretation of state law in deciding not to instruct jury on non-slayer affirmative defense to felony murder and denying habeas petition).

While Petitioner may have preferred the opportunity to argue an entrapment defense, Petitioner had not established that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *White*, 134 S. Ct. at 1702 (internal quotation marks omitted). Petitioner has failed to satisfy his burden to show that the state court unreasonably applied New York law in determining "no reasonable view of the record" supported an entrapment defense. *Butts*, 553 N.E.2d at 663. Because Petitioner was not erroneously deprived a jury instruction he was entitled to, *Davis*, 270 F.3d 124, Petitioner's federal due process claim must fail. The Court finds that neither the trial court's decision nor the Appellate Division's decision upholding the determination that Petitioner had not met his burden of establishing his entitlement to the entrapment defense by a preponderance of the evidence under New York law was "contrary to" or an "unreasonable application" of Supreme Court precedent or "based on an unreasonable determination of the facts." *Cullen*, 563 U.S. at 181.

### 3. Ineffective Assistance of Counsel

"Petitioner objects to the R&R's judgment upholding trial counsel's tactical determination for the introduction of uncharged crimes." (Obj's 12.) In particular, Petitioner argues Judge Davison erred when he concluded that "comments made by trial counsel's introduction of uncharged crimes" were "the 'standard and appropriate defense tactic to "draw the teeth" of anticipated questioning by the prosecution,'" because such a holding "is irreconcilable with the record." (*Id.*) Petitioner references summations by the prosecution stating:

> You even heard in this case through the defense that he sold drugs on February 9.
> Well, Ladies and Gentlemen, you are not going to hear it from the People because
> you know what, *the People couldn't bring it up because we didn't prosecute him
> for it*, but if Lentine [Petitioner's attorney] wanted to bring it up, you know what,
> he sold another ounce on February 9th.

(*Id.*)[16]  Based on this statement, Petitioner believes "the R&R's judgment cannot be consistent with trial counsel's tactical strategic defense in nature that was to counterattack (anticipated questioning by the prosecution), who admittedly attested, 'that it could not bring up the February 9th drug sale.'"  (*Id.* at 12–13.)  Petitioner argues that "when trial counsel stipulated as to the February 9, 2004 drug sale that went to the heart of Petitioner's defense" this was "patently prejudicial."  (*Id.* at 17.)  And, according to Petitioner, "there is no justification or strategy for stipulating the full evidentiary force of the prosecutor's case."  (*Id.*)

Additionally, Petitioner states that trial counsel made a string of prejudicial comments, in particular, that "Petitioner's AKA Diabolic translated to 'the Devil,'" Petitioner was "waiting sentence on the February 9th conviction and currently incarcerated," Petitioner was "[a]ssociated with gang affiliation," and Petitioner was "not a U.S. citizen."  (*Id.* at 13.)[17]  Petitioner alleges trial counsel "impersonated, if not imitated[,] Donald Trump's recent presidential campaign speech, portraying immigrants from Mexico as 'bringing drugs, they're bringing crime, they're rapist[s], and some[,] I assume, are good people."  (*Id.*)  According to Petitioner, trial counsel's behavior "denigrating Petitioner's character in the eyes of the jury reflects the same . . . [n]ational outcry attacking the Latin community . . . ."  (*Id.*)  Petitioner argues this behavior "has no basis whatsoever in *Strickland*'s terminology evaluating strategy.  As it was

---

[16] Petitioner does not cite to the trial transcript, but appears to be quoting statements made during summations.  (*See* Mar. 4 Tr. 19.)

[17] Again, Petitioner does not cite to the trial transcript, but he appears to be referring to statements made during voir dire.  (*See* Feb. 24 Tr. 100–01.)

improper for the R&R to even invent one, and thus obviously the R&R's determination was demonstrably erroneous." (*Id.*) "[T]rial counsel is bound by professional ethical obligations to do no harm to its constituent and clients alike. Here, trial counsel explicitly breached these primary professional responsibilities by eliciting [the] comments." (*Id.* at 13–14.)

Petitioner also argues that "[t]he cumulative effect doctrine should have dictated the R&R's reasoning" and "by virtue of the repeated violations" habeas relief is justified. (*Id.* at 14; *see also id.* at 19 (arguing "Cumulative Effect Violated Petitioner's Right to a Fair Trial").) Specifically, "[t]here was no valid justification for trial counsel to vouch for the credibility of the prosecutor's forensic scientist expert . . . ." (*Id.* at 19.) "To allow defense counsel whom [sic] is to do no harm is incompatible with vouching for the government witness, and it would require the court to suspend all sense of logic, that trial counsel employed a reasonable strategy to obtain a specific goal requires a bereft of reasoning." (*Id.*) Petitioner cites to *People v. Wright*, 37 N.E.3d 1127 (N.Y. 2015), as an example of ineffective assistance when "defense counsel failed to object to the prosecutor's multiple misrepresentation[s] of the DNA evidence." (*Id.* at 19–20.)

The Court understands Petitioner to raise three purported errors by trial counsel: (1) comments made by trial counsel during summations regarding uncharged crimes; (2) comments made by trial counsel during jury selection; and (3) comments regarding the credibility of the People's expert witness. Petitioner also raises a claim of cumulative error regarding the combination of these.[18] The Court will address each in turn.

---

[18] Petitioner does not object to the R&R's holding rejecting Petitioner's claims raised in the state court that defense counsel was ineffective for: filing an untimely application to identify the confidential informant; failing to request a *Sandoval* hearing; failing to object to certain unidentified comments made by the prosecution during its summation; and failing to request that the jury be polled. (*See* Appellant's Br.) The Court finds that the Judge Davison's conclusions as to these claims were not "clearly erroneous or contrary to law," *Eisenberg*, 564 F. Supp. 2d at 226 (quoting Fed. R. Civ. P. 72(b)(2)), and adopts these portions of the R&R, (*see* R&R 21–24).

The Sixth Amendment of the United States Constitution provides that a criminal defendant shall enjoy the right to effective assistance of counsel. *See Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (per curiam). A claim for ineffective assistance of counsel is analyzed under the *Strickland* two-part test: to be entitled to relief, a Petitioner must show that (1) his attorney's conduct was constitutionally deficient because it fell below an "objective standard of reasonableness," *Strickland,* 466 U.S. at 687–88, and that, (2) Petitioner was prejudiced by the ineffective representation, that is, but for the deficiency, there is a reasonable probability that "the result of the proceeding would have been different," *id.* at 694.

To determine whether counsel's conduct is deficient under the first prong, "the court must determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Lindstadt v. Keane*, 239 F.3d 191, 198–99 (2d Cir. 2001) (alterations and internal quotation marks omitted). The Court "must consider all the circumstances, [and] must make every effort to eliminate the distorting effects of hindsight." *Id.* at 199 (alterations and internal quotation marks omitted). Indeed, Petitioner must overcome "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 446 U.S. at 689.

To satisfy the second prong, Petitioner must demonstrate "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A] court hearing an ineffectiveness claim must consider the totality of the evidence . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. It is not

enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Petitioner's ineffective assistance of counsel claims fail.  The R&R does not address Petitioner's claim that trial counsel was ineffective for bringing up the February 9, 2004 drug sale on cross examination and during summations, (Mar. 4 Tr. 8, 12), despite trial counsel being told the entrapment defense would not be allowed, (Feb. 23 Tr. 5–17; Feb. 24 Tr. 182–88). However, the Court finds these statements and strategy were not constitutionally deficient. There are "countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.  Here, at summation, trial counsel chose to focus on an entrapment defense, and told the jury that the encounter on February 9, 2004 between Petitioner, the confidential informant, and Detective Faluotico, laid the groundwork for the February 17, 2004 and March 25, 2004 dealings that were the basis of the prosecution's case.  (*See, e.g.*, Mar. 4 Tr. 12 ("I saw no evidence regarding [Petitioner] and the sale of drugs before that date. . . [R]ecall that I'm the one that brought up the February 9th meeting and the [confidential informant]. . . [Petitioner] said no.); *id.* at 11 ("I suggest to you there are two plants in this case.").)  Trial counsel also sought to use the February 9, 2004 transaction to seek to diminish Petitioner's intent to sell drugs.  (*See, e.g.*, *id.* at 15–16 ("You will decide what intent if any [Petitioner] had on February 17th and March 25th.  You may consider the impact Detective Faluotico and the [confidential informant] had on that intent.").)

It is true that pre-trial and again during the trial, the trial court ruled that the evidence did not support an entrapment defense.  (Feb. 23 Tr. 6–17; Feb. 24 Tr. 182–188.)  However, trial

counsel zealously argued that the evidence introduced at trial and the testimony of Petitioner would change the trial court's opinion on the merits of an entrapment defense. (Feb. 24 Tr. 182–188.) The trial court told trial counsel the issue would be taken up again. (*Id.* at 187 ("Mr. Lentino: 'I am going to raise the request again . . .' The Court: '[W]hatever you do on your case we'll take it up on your case.' Mr. Lentino: 'I'm going to ask for the charge.' The Court: 'We'll take it up on your case.'").) Trial counsel's strategy ultimately did not succeed—the trial court concluded an entrapment defense was not warranted, but the Court does not find trial counsel ineffective for trying. In *United States v. Leslie*, 103 F.3d 1093 (2d Cir. 1997), the Second Circuit held that trial counsel was not ineffective despite the entrapment defense strategy failing, because counsel "was pursuing a strategy that at the time seemed to be a viable defense for [the] defendant in light of the overwhelming evidence against him." *Id.* at 1099. Here, too, trial counsel pursued a strategy that seemed to be a viable defense in light of the overwhelming evidence against Petitioner, which included two cocaine sales to Detective Faluotico, who testified at trial regarding the sales and whose testimony was corroborated by testimony from backup and surveillance units and recordings from a body wire worn during the transactions, as well at wiretapped phone conversations about the sales with the undercover detective and others in the transaction chain. (*Id.* at 6–17.) *See also United States v. Vegas*, 27 F.3d 773, 777–78 (2d Cir. 1994) (finding "counsel's strategic decision to pursue the defense that [the defendant] was entrapped by [a government informant], rather than contest [the defendant's] involvement," was "a decision that appears sound in light of the tape-recorded evidence of [the defendant's] participation" in a drug sale). That the trial court ultimately ruled against trial counsel on the applicability of the defense does not make trial counsel ineffective for attempting to raise it. *See Harrington*, 562 U.S. at 110 ("[A]n attorney may not be faulted for a reasonable miscalculation

or lack of foresight or for failing to prepare for what appear to be remote possibilities."); *Lafler v. Cooper*, 566 U.S. 156, 174 (2012) (noting that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance"); *Siraj v. United States*, 999 F. Supp. 2d 367, 374 (E.D.N.Y. 2013) (same). Petitioner has not "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). Accordingly, the Court finds "trial counsel's defense, though unsuccessful, was the result of reasonable professional judgment." *Id.* at 699.

Judge Davison rejected Petitioner's ineffective assistance claims for trial counsel's comments during jury selection. During jury selection, trial counsel stated he was going to "walk straight into the middle of the issues" and alert the potential jurors about Petitioner's background so that if they could not be "fair" and "impartial" knowing the information, they could let trial counsel know. (Feb. 24 Tr. 99.) Then, trial counsel stated that "[Petitioner] was recently convicted awaiting sentencing on the felony." (*Id.* at 100.) The prosecution objected to that statement, which the trial court sustained. (*Id.*) Trial counsel then stated "[h]e is currently incarcerated." (*Id.*) Trial counsel also stated "[h]is name has been bandied about with BKK." (*Id.*)[19] The prosecution again objected, and the trial court sustained the objection. (*Id.* at 101.)[20] Trial counsel also stated that Petitioner only "speaks some English" and "is not a U.S. citizen." (*Id.* at 103.) Judge Davison properly acknowledges that these comments may have felt "uncomfortable" to Petitioner. (R&R 22.) The Court agrees that while Petitioner may have

---

[19] BKK is represented to be a gang. (*See* Mar. 2 Tr. 58.)

[20] Petitioner's ineffectiveness claim related to the two statements the prosecution objected to and the trial court sustained must fail, because even if trial counsel erred by making these statements, they were not before the jury and so they could not cause any prejudice. *Strickland*, 466 U.S. at 687.

preferred this information not be shared with the jury, counsel are given a "wide latitude . . . in making tactical decisions." *Harrington*, 562 U.S. at 106 (internal quotation mark). And, as Judge Davison correctly concluded, (R&R 22), these statements reflected the "standard and appropriate defense tactic to 'draw the teeth' of [anticipated questioning by the prosecution] by admitting up front facts that the jury would learn in any event, so as not to appear to have hidden the truth." *Riddick v. Fischer*, No. 04-CV-2230, 2004 WL 2181118, at *3 (S.D.N.Y. Sept. 27, 2004). Trial counsel was not ineffective by making the tactical decision to alert potential jurors during voir dire of Petitioner's background so that those unable to remain impartial could be struck. *See, e.g.*, *United States v. Gent*, No. 10-CR-90S, 2012 WL 1899159, at *13 (W.D.N.Y. May 23, 2012) (finding defense counsel decision to allow potential jurors to be questioned regarding possible bias related to defendants "psychic" abilities was not "unreasonable") (internal quotation marks omitted), *aff'd sub nom. Gane v. United States*, 592 F. App'x 4 (2d Cir. 2014); *see also United States v. Price*, 443 F. App'x 576, 579 (2d Cir. 2011) (finding defense counsel "asking jurors whether [the defendant's] use of th[e] alias ["Crime"] would interfere with their ability to be fair and impartial," and then "decid[ing] to strike jurors who would be prejudiced by the nickname rather than precluding its use at trial" was a "strategic decision [that] was not unreasonable").[21] Such conduct constitutes a "sound trial strategy" and does not fall "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688–89.

---

[21] The numerous cases Petitioner cites are distinguishable. (*See* Obj's 14.) In *People v. Cleophus*, 916 N.Y.S.2d 624, 625 (App. Div. 2011), and *United States v. Villalpando*, 259 F.3d 934, 937 (8th Cir. 2001), both courts found there was no strategic or other legitimate explanation for the attorney's conduct. Here, trial counsel made clear his strategy to "walk straight into the middle of the problem" and inform the jurors of Petitioner's background. (Feb. 24 Tr. 99–100.) The issue in both *People v. Webb*, 935 N.Y.S.2d 423, 423 (App. Div. 2011), and *Crotts v. Smith*, 73 F.3d 861, 866 (9th Cir. 1996), was defense counsel's failure to object to prejudicial statements made by the prosecution. They, too, are distinct from the facts in Petitioner's case, because the trial counsel, not the prosecution, made certain statements as part of the strategy to

Judge Davison correctly rejected Petitioner's ineffective assistance claim for trial counsel's statements regarding the credibility of Gayle Tissot, the prosecution's expert forensic scientist. (R&R 23.)[22] Petitioner points to trial counsel's statement that "[Tissot] testified in cases I have been involved in. She knows what she is doing." (Mar. 2 Tr. 11.) Trial counsel made that comment as part of his statement that there was no objection to the prosecution offering Tissot as an expert as a forensic scientist. (*See id.*) Trial counsel's decision to consent to Tissot's qualification was a reasonable trial strategy, given there was no basis to object to her qualifications. Tissot has a bachelor's degree in chemistry, a master's degree in organic chemistry, 27 years of experience as a forensic scientist, and had testified "somewhere between 80 and 90 times" as an expert in court before. (*See id.* at 9–11 (explaining qualifications).) *Strickland*'s deferential standard permits counsel to make the strategic choice of "conced[ing] certain evidence at trial." *Baston v. United States*, No. 10-CV-4344, 2011 WL 3962643, at *3 (S.D.N.Y. Sept. 8, 2011). Such concessions may serve to "bolster the defense's overall credibility in the eyes of the jury." *Francis v. United States*, No. 02-CV-468, 2010 WL 1260158, at *6 (E.D.N.Y. Mar. 31, 2010) (finding that the decision not to contest drug quantity was reasonable considering all the circumstances); *see also Alcindor v. Schneiderman*, No. 15-CV-1892, 2017 WL 1383997, at *18 (S.D.N.Y. Apr. 14, 2017) ("Given the overwhelming evidence that the documents . . . were in fact falsified, it was reasonable for defense counsel to concede

---

inform the jurors of Petitioner's background to attempt to select an unbiased jury. (Feb. 24 Tr. 99–100.) Additionally, *United States v. Williams*, 585 F.3d 703, 705 (2d Cir. 2009), involved a trial court's evidentiary rulings and is not applicable.

[22] In Petitioner's Reply Supplement, Petitioner cites to an investigation by the New York State Attorney General regarding "possible misconduct and shoddy or falsified forensic testing" and attaches the report. (*See* Pet'r's Reply 1.) There is no indication that Tissot was involved in any misconduct or that the flawed forensic testing involved Petitioner's case, so the Court concludes there is no merit to any claim related to the report.

certain issues with respect to the tampering charges to maintain credibility with the jury."), *adopted by* 2018 WL 583117 (S.D.N.Y. Jan. 25, 2018); *Shi Yong Wei v. United States*, No. 11-CV-6961, 2013 WL 980151, at *4 n.8 (S.D.N.Y. Mar. 12, 2013) (finding that counsel agreeing to stipulation was not ineffective because "[d]ecisions made at trial directed at maintaining credibility with the jury can hardly be considered ineffective assistance of counsel" (alteration and internal quotation marks omitted)). Considering the circumstances, trial counsel's actions were not "outside the wide range of professionally competent assistance." *Lindstadt*, 239 F.3d at 198–99 (internal quotation marks omitted). Additionally, no part of the defense strategy consisted of discrediting Tissot's testimony, because the defense did not challenge that the substance Petitioner sold to the undercover detective was cocaine or the weight of the substance.

Petitioner's analogy to *Wright*, 37 N.E.3d 1127, therefore fails. (Obj's 19–20.) There, trial counsel was deemed ineffective for failing "to object to the prosecution's inaccurate and misleading descriptions of the DNA evidence during the People's closing," which falsely stated that the defendant's DNA conclusively matched that found at the crime scene and on the victim, when the expert testified just the opposite. *Id.* at 1134, 1136. The court determined the mistake could not "be attributed to a failed trial strategy," given the entire strategy was to discredit the DNA evidence. *Id.* at 1134. Here, the prosecution did not misrepresent the evidence in such a way that trial counsel would have been ineffective for failing to object. The decision to not object to Tissot's expert testimony falls into the "wide latitude" counsel is given "in making tactical decisions." *Harrington*, 562 U.S. at 106; *see also United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("[D]ecisions which fall squarely within the ambit of trial strategy . . . if reasonably made, will not constitute a basis for an ineffective assistance claim.").

The "strong presumption" that trial counsel's conduct was "sound trial strategy" has not been overcome. *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

Having concluded that none of these claims establishes ineffective assistance, the Court rejects as meritless Petitioner's claim that based on the "cumulative effect" of these actions and "by virtue of the repeated violations" habeas relief is justified. (Obj's 14, 19.) Even if Petitioner could demonstrate ineffective assistance regarding any of these claims, there is no prejudice. The verdict had "overwhelming record support," negating the possibility that absent any error, the jury "would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695–96; *see also United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991) ("[G]iven the plethora of evidence against [the petitioner], there is little reason to believe that alternative counsel would have fared better."); *Lobacz v. United States*, No. 16-CV-3386, 2018 WL 472858, at *7 (E.D.N.Y. Jan. 18, 2018) (considering the defendant's allegations cumulatively and concluding that "given the overwhelming evidence of guilt, there is no reasonable probability that the result of the trial would have been different" but for counsel's alleged errors). Considering the totality of the evidence, including the sales to an undercover detective who wore a body wire, surveillance teams observing the sales, and recorded phone conversations arranging the sales, (*see* Mar. 4 Tr. 16–30), there is no indication that but for these alleged errors by Petitioner's trial attorney, "the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694.

### 4. Withholding Confidential Informant's Name

Petitioner objects to the R&R's determination that withholding the name of the confidential informant who introduced Petitioner to the undercover detective did not violate Petitioner's right to a fair trial. (*See* R&R 24–26.) Petitioner objects to the R&R's conclusion "that, the confidential informant's participation was minimal, there was no close question at trial

as t[o] 'identification', and the evidence of guilt was overwhelming" because "[t]he level of generality was framed to extremely high contrary to the narrow holding underlying the specific question presented in the state court proceeding." (Obj's 14–15.) He argues the R&R misconstrued the law, because "[t]he question is not whether the evidentiary value of the confidential information outweighed disclosing the informant's 'identity', but whether Petitioner was entitled the 'name' of the informant which turned on an entirely different analysis." (*Id.* at 15.) Citing *Roviaro v. Unites States*, 353 U.S. 53 (1957), for the proposition that the purpose of "withholding information concerning the 'identity' of the confidential information is to encourage citizens to report criminal activity to the police by protecting the informants' anonymity," Petitioner argues "the 'privilege' must give way where the informant's testimony is material where it potentially could support an entrapment defense." (*Id.* (citing *DiBlasio v. Keane*, 932 F.2d 1038, 1042–43 (2d Cir. 1991)). Petitioner also cites *Smith v. Illinois*, 390 U.S. 129 (1968), for the proposition that "when the credibility of the witness is in issue, the very stating part [sic] in 'exposing falsehood and bring[ing] out the truth' through cross-examination must necessarily be to ask the witness who [he] is and where he lives. The witness's name and address open to countless avenue of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." (*Id.* at 16.)

Petitioner argues the R&R was factually incorrect in concluding "that the relevancy of the informant had no bearing on the underlying offense, and the informant was only involved in the February 9, 2004 sale." (*Id.* at 16–17.) Petitioner contends that the informant's identity "relates to the overall criminal investigation from 2000 to 2004, in which the informant was instrumental in browbeating Petitioner whom otherwise did not harbor a predisposition to engage

in drug activities and was fatal to Petitioner's defense." (*Id.* at 17.)[23] "More substantively, the investigation commenced in 2000 to 2004, and developed through unlawful wire-tapes, in which Petitioner had a vested interest i[n] having the jury evaluate the integrity of the investigation by producing 33,000 recordings showing Petitioner was not identified as the particular target." (*Id.* at 18.) Petitioner suggests there are phone records to back up Petitioner's claim of secretive pretext. (*Id.*) "Despite the Appellate Division's ruling that nondisclosure of the informant's 'name' was in accordance with federal law, and failed to draw all inference[s] in Petitioner's favor, this Court should not overlook the phone records that sufficiently would have aided Petitioner's entrapment defense which denied him the right to a fair trial." (*Id.*) "Accordingly," argues Petitioner, "the R&R's determination must be reversed." (*Id.* at 19.)

The prosecution's privilege to withhold the identity of a confidential informant must yield "[w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60–61. *Roviaro* addressed the Government's right to withhold the identity of an informer who helped set up the commission of the crime and who was present at its occurrence. *Id.* at 60. The Supreme Court held that "no fixed rule with respect to disclosure is justifiable." *Id.* at 62. And, "the problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* Determining whether the informant's testimony is material "depend[s] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the

---

[23] Petitioner also argues that the only reason "the evidence was overwhelming" was "because of the counsel's error, and not in spite of the weakness of the prosecution's case," repeating his arguments that trial counsel's discussion of the February 9, 2004 drug sale "was patently prejudicial." (*Id.* at 17.) These ineffective assistance of counsel arguments were addressed and rejected by the Court in Section I.B.3.

informer's testimony, and other relevant factors." *Id.* "The determination of materiality lies with the trial judge, subject to an abuse of discretion standard of review." *DiBlasio*, 932 F.2d at 1042 (internal quotation marks omitted). As a general matter, "[t]he defendant bears the burden of showing the need for disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." *United States v. Fields,* 113 F.3d 313, 324 (2d Cir. 1997) (internal citations omitted).

The Appellate Division rejected this claim on the merits, holding that given "the confidential informant's participation was minimal, there was no close question at trial as to identification, and the evidence of guilt was overwhelming, the trial court properly denied [Petitioner's] application for disclosure of the informant's identity." *Garcia*, 885 N.Y.S.2d at 773 (citing *People v. Vega*, 805 N.Y.S.2d 567, 569 (App. Div. 2005); *People v. Chavis*, 493 N.Y.S.2d 613, 614 (App. Div. 1985); *People v. Gilmore*, 482 N.Y.S.2d 317, 319 (App. Div. 1984).) Pre-trial, the trial court heard argument and ruled on the issue of disclosing the confidential informant's identity to support Petitioner's entrapment defense. (*See* Tr. (Feb. 22, 2005) ("Feb. 22 Tr.") 13–59 (Dkt. No. 10) (arguing the application for confidential informant's identify); Feb. 23 Tr. 5–17 (denying the application).) The prosecution argued that at least seven officers conducting surveillance saw the confidential informant leave before the February 9, 2004 sale took place, (Feb. 22 Tr. 17); four officers with a view into the vehicle saw that Detective Faluotico and Petitioner were the only people in the car during the sale, (*id.* at 28); and the audio from the recording device the undercover wore on February 9, 2004 indicated the confidential informant left before Detective Faluotico and Petitioner discussed the sale, (*id.* at 25, 30–31). Petitioner's trial counsel argued that Petitioner would have never sold the quantity he did but for "consistent and constant" requests by law enforcement, and that tapes of

conversations between the confidential informant and Petitioner were missing from the record. (*Id.* at 28–29; Feb. 23 Tr. 9.)

The trial court first found the application was untimely, as it was submitted on the eve of trial. (Feb. 23 Tr. 6–8.) Petitioner's counsel first made the request on February 22, 2005, the day voir dire was scheduled to begin. (*Id.*) On the merits, having reviewed the transcript of the interactions between Petitioner and the confidential informant that had been recorded by a body wire, the trial court found the recorded conversations leading up to the February 9, 2004 sale with the confidential informant present were "all general" and "not specifically geared to any transaction whatsoever." (*Id.* at 11–12.) The trial court determined that, "it is apparent from this transcript that . . . the [confidential informant] gets out of the car." (*Id.* at 12.) And, only after the confidential informant leaves did Petitioner and Detective Faluotico start talking about a drug transaction, including the price and quantity. (*Id.*) Because the trial court determined there was no merit to the entrapment defense given that "it [was] not disputed that [Petitioner] had a mindset to sell drugs on more than one occasion," the trial court did not permit disclosure of the confidential informant's identify. (*Id.* at 14–17.) When trial counsel renewed the request to disclose the confidential informant's name prior to submitting the case to the jury, the trial court ruled that the prosecution "withdrew the only count of this indictment that in any way related to the conduct of the informant," and "there is no evidence in this record that in any way a confidential informant was involved in anything" related to the February 17, 2004 or March 25, 2004 sales. (Mar. 3 Tr. 74–75; *see also* Feb. 22 Tr. 46 (withdrawing February 9, 2004 count).) In closing, trial court again noted that the eve of trial request had been untimely. (Mar. 3 Tr. 75.)

Neither the trial court's decision, nor the Appellate Division's decision upholding it, were "contrary to clearly established Federal law as determined by the Supreme Court of the United

States," because they did not apply "a rule that contradicts the governing law set forth in" *Roviaro* and its progeny. *Williams*, 529 U.S. at 405–06 (alterations and internal quotation marks omitted). While the Appellate Division's decision did not cite *Roviaro* by name, Petitioner does not argue that the decisions the Appellate Division did rely on—*Vega*, 805 N.Y.S.2d at 569, *Chavis*, 493 N.Y.S.2d at 614, and *Gilmore*, 482 N.Y.S.2d at 319—are "diametrically different," "opposite in character or nature," or "mutually opposed" to *Roviaro*. *Williams*, 529 U.S. at 364. *Gimore*, upon which *Vega* and *Chavis* both rely, applied the same standard set out in *Roviaro*: the Appellate Division considered whether disclosure of the confidential informant's identity was "relevant to the issue of [the] defendant's guilt or innocence." 482 N.Y.S.2d at 319; *see also Roviaro*, 353 U.S. at 60–61 (setting out "relevant and helpful to the defense of the accused" standard). Additionally, the Appellate Division, and the cases it relied on, all accorded with *Roviaro's* instruction to balance the "particular circumstances of each case." *Id.* at 62. While the trial court did not cite cases by name in reaching its decision, it also considered case law presented by prosecution following the *Gilmore*, *Vega*, and *Chavis* line of cases in reaching its decision. (Feb. 22 Tr. 18 (citing *People v. Rushie*, 557 N.Y.S.2d 131, 131 (App. Div. 1990)); *id.* at 28 (citing *People v. Ortiz*, 639 N.E.2d 1130 (N.Y. 1994)).) Petitioner does not argue that this was in error.

Nor did "the state court confront[] a set of facts that are materially indistinguishable from [*Roviaro*] and nevertheless arrive[] at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 406. Petitioner's case was easily distinguishable from *Roviaro*, where the decision was based on a confluence of three factors: the "Government's informer was the sole participant, other than the accused, in the transaction charged," "[t]he informer was the only witness in a position to amplify or contradict the testimony of government witnesses," and "a

45

government witness testified that [the informer] denied knowing [the] petitioner or ever having seen him before." *Roviaro*, 353 U.S. at 64–65.  Here, the confidential informant was not a participant, let alone the sole participant, in the transactions that went to the jury.[24]  Additionally, the identification of Petitioner as the individual involved in the drug sale was not in dispute.  The trial court reviewed transcripts from tapes of the confidential informant's interactions with Petitioner, and correctly concluded the confidential informant would not have contradicted the prosecution's testimony or bolstered Petitioner's entrapment defense, because the confidential informant was not present for the February 9, 2004 sale and did not discuss the sale with Petitioner prior to its occurrence.  (Feb. 23 Tr. 11–12.)  Further, the trial court found no reason to disclose the confidential informant's identity to bolster an entrapment defense that clearly lacked any merit, because Petitioner had already indicated a predisposition to commit the crime.  (*Id.* at 14–15.)  Additionally, Petitioner does not present any connection between the confidential informant and a viable entrapment defense to the February 17, 2004 or March 25, 2004 sales for which he was actually charged and ultimately convicted.  Accordingly, the Court cannot now conclude the facts underlying the holding in *Roviaro* are "materially indistinguishable" from the facts here.  Thus, neither the trial courts' nor Appellate Division's decision was contrary to clearly established Federal law.

Nor were the trial court or Appellate Division's decisions "an unreasonable application of clearly established federal law," because they did not "unreasonably appl[y]" the correct governing legal principle to the facts of Petitioner's case.  *Williams*, 529 U.S. at 412–13

---

[24] The People dismissed the charge related to the February 9, 2004 sale, (Feb. 22 Tr. 46), where the confidential informant was present for the introduction of Petitioner to Detective Faluotico, but then left before the sale took place, (Feb. 23 Tr. 11–12; Mar. 1 Tr. 111–13, 123–24, 126–27; Mar. 2 Tr. 42–43).

(alterations and internal quotation marks omitted).  The Supreme Court has made clear that *Roviaro* was not based on a "fixed rule," but one that requires balancing "the particular circumstances of each case."  *Roviaro*, 353 U.S. at 62; *see also McCray v. State of Ill.*, 386 U.S. 300, 311 (1967) ("What *Roviaro* . . . makes clear is that th[e Supreme] Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity."); *id.* at 312 ("[T]he [Supreme] Court . . . has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial." (emphasis omitted)).  Thus, "[n]either *Roviaro* nor the leading case in this circuit*, United States v. D'Angiolillo*, [340 F.2d 453, 454 (2d Cir. 1965)], offer[s] specific touchstones for determining when disclosure of the informant's identity is 'relevant and helpful to the defense of the accused.'"  *Hawkins v. Robinson*, 367 F. Supp. 1025, 1035 (D. Conn. 1973).

*Roviaro* was "a case where the Government's informer was the sole participant, other than the accused, in the transaction charged."  *Roviaro*, 353 U.S. at 64.  In *Rugendorf v. United States*, 376 U.S. 528 (1964), the Supreme Court refused to extend *Roviaro* to circumstances where the informant had not "played a direct and prominent part, as the sole participant with the accused, in the very offense for which the latter was convicted."  *Id.* at 534; *see also Pena v. LeFerve*, 419 F. Supp. 112, 118 (E.D.N.Y. 1976) (contrasting the *Roviaro* and *Rugendorf* holdings).  Accordingly, "[a] definite rule of thumb . . . has developed: where the informant was a witness or a participant in the alleged crime, disclosure of his identity is required.  On the other hand,"—as was true here—"where the informant was not a participant or witness, *e.g.* where he merely introduced undercover law enforcement officers to a suspected drug dealer but was not involved in any later transactions between the parties, disclosure is not required."  *Hawkins*, 367 F. Supp. at 1035 (citing *United States v. Roberts*, 388 F.2d 646, 648–649 (2d Cir. 1968)).  Not

47

only did the trial court determine the confidential informant had no role leading up to or during the February 9, 2004 drug transaction other than introducing Petitioner to Detective Faluotico and was not present during the sale, (Feb. 23 Tr. 11–12; *see also* Mar 1. Tr. 111–13, 123–24, 126–27; Mar. 2 Tr. 42–43 (noting the confidential informant's lack of presence at the sale)), the People dismissed the charges for that particular sale, (Feb. 22 Tr. 46; Mar. 1. Tr. 111). The informant had *no* role in the February 17, 2004 or March 25, 2004 sales between Detective Faluotico and Petitioner. (Mar. 2 Tr. 36, 39.) As the Appellate Division found, "the confidential informant's participation was minimal" in regard to the charged crimes. *Garcia*, 885 N.Y.S.2d at 773. Other courts in the Second Circuit have similarly found *Roviaro* inapplicable where the confidential informant played a minimal role by merely introducing the defendant to the undercover law enforcement officer. *See, e.g.*, *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir. 1984) (finding "standard for requiring disclosure was not met" when "[t]here is no indication that either of [the] informants were key witnesses to any of the alleged offenses or participants in those offenses"); *United States v. Ortega*, 471 F.2d 1350, 1357 (2d Cir. 1972) ("[T]his is not a case where a government undercover agent plays an active part in the carrying out of the transaction that is charged in the indictment against the defendant, as was the case in *Roviaro*."); *United States v. Russ*, 362 F.2d 843, 845 (2d Cir. 1966) (rejecting *Roviaro* argument where the informant "merely introduced" the defendant to the government agent and "wandered away to purchase some food while preliminary negotiations were in progress. And, even of more significance, when [the defendant and the government agent] consummated the sale on a public street corner in full view . . . the informer remained inside the [bar] and did not even witness the most crucial step in the offense."); *Sevencan v. Herbert*, 152 F. Supp. 2d 252, 270 (E.D.N.Y. 2001), *aff'd*, 316 F.3d 76 (2d Cir. 2002), *opinion amended and superseded*, 342 F.3d

69 (2d Cir. 2003) (denying habeas relief when "the petitioner made no showing that the confidential informant would have been of any value to his defense" because "the informant's only role in the case was introducing [the undercover law enforcement officer] to [the petitioner]"); *Rosa v. Kuhlmann*, No. 94-CV-5957, 1996 WL 1088920, at \*6 (E.D.N.Y. Sept. 10, 1996) (denying habeas relief when "[t]he informant was neither a key witness nor a participant in the crime" but had "merely led the undercover agent to the petitioner's apartment at the time of the first narcotics purchase [and] was not present during the undercover agent's conversation with [the] petitioner . . . [or] when the undercover agent made subsequent purchases"); *Journet v. Coombe*, 649 F. Supp. 522, 526 (S.D.N.Y. 1986) (denying habeas relief where "[t]he informant's role . . . was limited" as "[h]e was not present during conversations between [the petitioner] and the undercover agent, nor was he present during the drug sale. His role consisted of introducing the agent to [the petitioner] and later relaying a message to [the petitioner] to contact the agent" and concluding that "[w]here an informant was not a participant, but merely served to introduce the defendant to the undercover agent, disclosure is not required"); *Pena*, 419 F. Supp. at 118 (noting that "[o]ther than his introduction . . . the informer neither participated in the drug sale nor observed the transactions or consummation of the criminal activity" and "there was no testimony linking him to the dealings on the second date"); *see also Vega*, 258 F. App'x at 360 (denying habeas relief when "the sole role of the informant was to introduce the undercover police officer to the defendant . . . and set up a meeting at which [the petitioner] agreed to sell the undercover officers drugs," but the evidence did not "establish his entrapment defense" because

there was no "pressure" and the evidence "clearly showed [the defendant's] predisposition to sell drugs.").[25]

Petitioner argues that, per the Second Circuit's holding in *DiBlasio*, 932 F.2d 1038, "the informant's testimony is material where it potentially could support an entrapment defense." (Obj's 15). However, the Appellate Division's decision was not "an unreasonable application of clearly established federal law" for failing to reach the same outcome as *DiBlasio*. *Williams*, 529 U.S. at 412 (alteration and internal quotation marks omitted). In *DiBlasio*, the Second Circuit held that disclosure of the confidential informant's identity was required when "[the defendant] testified to facts which, if believed, would constitute a defense of entrapment and entrapment was in fact charged to the jury." *DiBlasio*, 932 F.2d at 1039. But, "[c]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings . . . of th[e Supreme] Court's decisions." *White*, 134 S. Ct. at 1702 (2014) (internal quotation marks omitted). And, the Supreme Court has not adopted the Second Circuit's interpretation of *Roviaro* in *DiBlasio*. Additionally, Petitioner's case is distinct from *DiBlasio*, since there, entrapment "was in the case" and charged to the jury. *DiBlasio*, 932 F.2d at 1043. Here, the trial court decided that

---

[25] The Court recognizes that in addition to "the minimal role the informer played," *Russ* and *Pena* also considered that the "the strong identification testimony, the lack of any allegation of entrapment, and the paucity of [the] petitioner's alibi defense, lead to the conclusion that the trial court properly denied [the] petitioner's request for disclosure." *Pena*, 419 F. Supp. at 118; *Russ*, 362 F.2d at 845 (same). Those cases involved a viable entrapment defense. Here, the trial court's decision not to disclose the confidential informant's identity based on the minimal participation, as well as other evidence of guilt, went hand-in-hand with the determination that the entrapment defense was meritless. (Feb. 23 Tr. 9–17.) As the Supreme Court has instructed, there is no "fixed rule" regarding when disclosure is appropriate. *Roviaro*, 353 U.S. at 62. In light of the "particular circumstances" of Petitioner's case, particularly the determination that the "possible defense[]" was meritless, the trial court did not improperly balance the circumstances when it decided not to give weight to the entrapment defense as a factor justifying disclosure of the confidential informant. *Id.*; *see also Castillo v. Miller*, No.04-CIV-6157, 2005 WL 1036346, at *7 (S.D.N.Y. May 4, 2005) (denying habeas relief because "[the c]ourt cannot say that the state courts . . . arrived at an unreasonable application of [the *Roviaro*] balancing test").

Petitioner's entrapment defense lacked any merit and Petitioner had not satisfied his burden of producing evidence of entrapment, given Petitioner's predisposition to selling drugs, among the other evidence in the record. (*See, e.g.*, Mar. 3 Tr. 72–73 (finding "there is no reasonable view of the evidence for which this jury could conclude that [Petitioner] was not predisposed such as would entitle him to an entrapment defense"); Feb. 23 Tr. 14–15 (finding "[Petitioner] has admitted that he is pre-disposed to sell drugs").) Accordingly, the informant's testimony could not be "material to the defense" on the issue of entrapment given Petitioner had failed to make an evidentiary showing that the confidential informant's testimony was significant to determining his guilt or innocence. *Ortega*, 471 F.2d at 1353 (2d Cir. 1972) (finding *Roviaro* inapplicable where "the so-called 'defense' of entrapment was not supported by any proof whatever"); *Sevencan*, 152 F. Supp. 2d 270 (finding disclosure of confidential informant's identity not warranted under *Roviaro* because the petitioner "made no showing that the confidential informant would have been of any value to his [duress] defense"); *Ortega v. United States*, 897 F. Supp. 771, 780 (S.D.N.Y. 1995) (finding disclosure of confidential informant's identity not warranted under *Roviaro* because the petitioner "failed to satisfy his burden of establishing that disclosure of the [confidential informant's] identity [wa]s material to his defense" (italics omitted)); *see also United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979) ("Unless some evidence of entrapment is adduced by the defendant, thereby properly raising the defense, disclosure would be unjustifiable. . . . Disclosure based upon mere speculation as to the relevancy of an informant's testimony is inappropriate given defendant's burden . . . of producing evidence of entrapment."). The Court holds that the state courts' determination that Petitioner was not entitled to disclosure the confidential informant's identity was not "objectively

unreasonable" or "so lacking in justification" that habeas relief is warranted. *White*, 134 S. Ct. at 1702 (internal quotation marks omitted).

The Court also rejects Petitioner's argument that the R&R and state courts' determination that "the confidential informant's participation was minimal," *Garcia*, 885 N.Y.S.2d at 773, was based on an unreasonable determination of the facts in light of the evidence presented. (Obj's 15–17.) The trial court did not err in determining that the confidential informant played a minimal role in the February 9, 2004 transaction after reviewing transcripts and telephone conversations involving the confidential informant, (Feb. 23 Tr. 11–12; *see also* Feb. 22 Tr. 12 41 (arguing what transcripts and telephone conversation recordings and transcripts would show)), and considering eyewitness testimony that the confidential informant left and was not in the car during the sale, (Feb. 22 Tr. 17, 28). The recorded conversations showed that Petitioner and the confidential informant did not discuss drug sales and that the confidential informant exited the car before Petitioner and Detective Faluotico started discussing the drug transaction on February 9, 2014. (Feb. 23 Tr. 11–12; Mar. 1 Tr. 111–13, 123–24, 126–27; Mar. 2 Tr. 42–43.)

Having failed to demonstrate that the state courts' decisions not to disclose the confidential informant was "contrary to" or "an unreasonable application of, clearly established Federal law," or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding," 28 U.S.C. § 2254(d)(1)-(2), Petitioner's claim for habeas relief on the ground that he was improperly denied information about the identity of the confidential informant is denied.

### 5. Expansion of the Record

Petitioner requested to expand "the record to incorporate 33,000 audio-tape transmissions conducted within a hiatus of two years investigation." (Pet'r's Traverse 4–5.) Petitioner raised

this argument for the first time in his reply to Respondent's opposition to the Petition. Therefore, as Judge Davison correctly noted, (*see* R&R 28–29), the Court need not address this claim. *See Ennis v. Artus*, No. 09-CV-10157, 2011 WL 3585954, at *19 (S.D.N.Y. Aug. 12, 2011) (rejecting two claims because they were first raised in the petitioner's reply brief), *adopted by* 2012 WL 3957046 (S.D.N.Y. Sept. 10, 2012).

Judge Davison also correctly concluded that, because Petitioner's claims were adjudicated on the merits in state court, the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181 ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

## II.  Conclusion

The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise. The Court therefore adopts the outcome of Judge Davison's R&R. Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent,

send a copy of this Order to Petitioner at the address listed on the docket, and close the case.

SO ORDERED.

DATED:     May ⟩7, 2018
                 White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE